THE STATE, EX REL. FARNSWORTH, *v.* McCABE, JUDGE.

(Decided December 23, 1940.)

*Mr. Percy R. Taylor,* for relator.
*Mr. Edwin J. Lynch,* for respondent.

CARPENTER, J. This is an original action in this court for a writ of prohibition to restrain respondent John M. McCabe, one of the judges of the Court of Common Pleas of Lucas county, Ohio, from proceeding in his court with an action in mandamus filed by six electors of precinct D, ward 4, of Toledo, to compel the respondents therein, the members of the Board of Elections of

Lucas county (hereinafter called the board) to count, record and certify the votes cast in that precinct in the general election held November 5, 1940.

To the petition herein, an answer has been filed and to it relator has filed a general demurrer. While the respondent has filed an answer, he claims the petition does not state a cause of action, and as the demurrer searches the record, it tests the sufficiency of the petition first.

The relator, who is not a party to the mandamus action, alleges in his petition that he is a citizen and taxpayer of Lucas county and was a candidate for representative to the General Assembly in that election, and that on the count of votes cast the board announced that he had been elected; that thereafter a committee of five persons representing Louis J. Laderman, another candidate for representative duly "demanded a recount of the votes cast for relator" in that and other precincts of Toledo; that the board recounted the ballots cast for relator in such precinct and being unable to agree as to the results thereof, submitted their findings to the Secretary of State of the state of Ohio; and that by an amendment filed to the petition, he has attached a copy of questions propounded to the Secretary of State by the board and the answers made to them.

The first question and answer are as follows:

"After a candidate requests a recount of his opponent's vote only, and such recount has been had, and the time for such requests have expired, can such candidate demand a recount of his own vote?

"Section 4785-162, General Code, and those sections immediately following set forth the conditions under which a recount of the ballots cast at an election may be applied for and the manner of conducting same. This section extends to a candidate, or to a group of five or more qualified electors voting at such election, the privilege of having the ballots cast for any candidate, or for all candidates for the same office, recounted

in any or all of the precincts in which votes for such candidate or candidates have been cast. The applicant for the recount is accorded the opportunity to determine and set forth in his application the exact privilege which he is seeking. He is not circumscribed in any way with reference to the demands the law permits him to make but the board of elections must limit the scope of their inquiry or investigation to the demands presented in the application for such recount.

"We therefore reach the conclusion with reference to the first question that after a candidate requests a recount of his opponent's votes only, and such recount has been had, and the time for such requests has expired, that such candidate can not demand a recount of his own vote."

The second question and answer are as follows:

"Under such circumstances, does the board have jurisdiction to conduct such a recount?"

"To this we would reply by saying that the board must confine the recount of ballots to the definite request of the applicant. The presumption is that the applicant has a sufficient reason for presenting the application for the recount as same was submitted.

"We therefore reach a conclusion that under such circumstances the board would not have jurisdiction to conduct such a recount."

The third question and answer are as follows:

"Does the board have jurisdiction to change the official count so as to defeat a candidate for the state Legislature by adding to the official count votes claimed to belong to such candidate and not counted for him?"

"In reply to this question we will again advise that the privileges sought by an applicant for a recount must be clearly set forth in his application. We recognize that errors do occur in the counting of ballots and also in the certification of the results as set forth in the poll books by precinct officials. We realize that the members of our boards of elections are not infallible in

their canvass of these poll books. However, the Legislature has recognized the need of, and has determined time limits within which certain official duties appertaining to elections must be performed.

"We reach the conclusion therefore that any change to which the official count would be subjected must be made prior to the official certification of the result of an election. Our answer to this question is therefore that the board does not have jurisdiction to thus change the official count."

The fourth question and answer are as follows:

"Does the board have authority and jurisdiction to add votes to the official count claimed to belong to the Democratic party and not counted for it, without a recount?"

"The statement just made with reference to the other questions presented would probably be accepted as an answer to this. We would, however, again emphasize the fact that it would be impractical to keep open indefinitely the opportunity to check election returns with the idea in view of finding errors, which if applicable, would change the result of an election. The records will always be made available and used as evidence where fraud and corruption is evident. The authority does not rest with the board, under the provisions of Section 4785-149, General Code, to adjust discrepancies which may appear in the poll books even to the extent of opening and recounting the ballots cast in a precinct but this must be done prior to the time of making and certifying the official returns. Having been officially canvassed and officially certified, the records must be accepted as *prima facie* correct.

"Our answer to this question is therefore that the board does not have authority and jurisdiction to add votes to the official count claimed to belong to a political party and not counted for it without a recount."

The fifth and final question and answers are:

"Does the board have jurisdiction and authority under such circumstances to recount all votes for the candidates for the state Legislature in the twenty-five precincts which were recounted under the request of Mr. Laderman for Mr. Farnsworth?"

"Insofar as the above observations are applicable, it is quite evident that the recount must be confined to the requests contained in the application. Manifestly, it would be unfair, out of curiosity or for other reasons, to canvass the votes for all candidates for state Legislature unless such recount had been legally applied for. The sections providing for a recount offer the opportunity to include such request if the applicant so desired, but in the absence of such inclusion, the law does not make it possible at a later time to amend the application originally filed.

"We therefore conclude that the board does not have jurisdiction and authority under the circumstances presented to recount all votes for the candidates for the state Legislature in the twenty-five precincts presented which were recounted under the request filed by the representatives of Mr. Laderman.

"You will therefore accept the conclusions above set forth as determinative of the tie votes upon the questions as above stated and presented in the minutes of your meetings."

A motion by respondent to strike out this amendment to the petition as irrelevant and immaterial was overruled. As will later appear, these proceedings of the board and the Secretary of State form an important part in determining the rights of the parties and the issues presented.

The petition herein further alleges that on the same day the petition in mandamus was filed, but later in the day, Laderman commenced a proceeding in the Court of Common Pleas to contest the election of relator and one of the judges of that court has enjoined

the board from issuing to him a certificate of election; that action is still pending and in it a recount of the ballots in precinct D is requested; that in addition to this contest, the mandamus action here in question was filed by six electors of precinct D and a copy of the petition in that case is attached to and made a part of the petition herein.

The material allegations in it are that the six electors who filed it and 273 others of that precinct whom they represent in this action, voted straight Democratic tickets on the state and county ballots; it then alleges the total votes cast, and the number credited to the candidates for President, in which there was a shrinkage of 6 votes; for Governor, with a shrinkage of 74 votes; for clerk of courts, 94 votes, and for coroner, 129 votes; that "said figures and said excessive loss and shrinkage as so shown in said pollbook should have been, with the exercise of ordinary care on the part of defendants as required under Section 4785-152 of the General Code of Ohio, discovered during the process of making the official canvass of returns in said precinct and before the certification of the official vote to the Secretary of State. Said negligent canvass of returns in said precinct by said defendants has resulted in the disfranchisement of a number of these plaintiffs in excess of sixty (60)"; that subsequent to the certification of the official vote, but within five days, five electors of Lucas county filed with the board a request for a recount in certain precincts, including precinct D "and during the process of said recount and the examination of the original ballots cast in said precinct D of ward 4, it was discovered and became known to a majority of the defendants * * * that more than sixty of them had been disfranchised"; and "said defendants with full knowledge that said votes have not been properly tallied and counted and credited to the candidates for whom they were cast, have refused and now

refuse and will in the future continue to refuse to properly count, tally and record said votes."

The prayer of that petition is a temporary injunction to restrain the issue of "certificates of election to any candidate of the state, county and legislative tickets and ordering them not to burn or destroy any of the ballots" cast in precinct D and to compel the defendants to make "a proper count of the ballots in said precinct D of ward 4 and a proper record and official count of the same; and certify the same to the Secretary of State of Ohio and issue certificates of election in accordance with said corrected official vote."

In the petition herein it is alleged that the respondent has assumed jurisdiction of that action, has issued the temporary injunction prayed for and an alternative writ of mandamus.

All of the foregoing allegations of the petition in the case at bar are admitted in the answer, except it is denied by respondent that the writ of mandamus presented to him "requested him to order a recount of the votes of precinct D."

It is alleged in the petition and denied in the answer that the Secretary of State determined that the relator was elected, but it is admitted that the exhibit attached to the amendment to the petition is a true copy of the letter sent by the Secretary of State to the board.

In *State, ex rel Nolan,* v. *Clendening,* 93 Ohio St., 264, 112 N. E., 1029, the opinion, at page 271, states the conditions necessary to warrant the granting of a writ of prohibition as follows:

"1. That the court, officer or person against whom it is sought is about to exercise judicial or quasi-judicial power.

"2. That the exercise of such power is unauthorized by law;

"3. That it will result in injury for which no other adequate remedy exists."

It is admitted that defendant intends to and will exercise or attempt to exercise judicial power in the mandamus action. Should the proceedings in that action result in a wrongful change of the results of the election as to relator Farnsworth, injury will be done to him, and as he is not a party to the mandamus action, he has no way to present his interests there or to appeal from any adverse judgment therein. Thus the conditions mentioned in items 1 and 3 are present, provided there is presented the one in item 2, *viz.*: "That the exercise of such power is unauthorized by law."

To determine this question requires an examination of some of the election laws and the decisions construing and applying them.

It seems that the main issue raised by the petition in mandamus is whether in the performance of the duties imposed under Section 4785-152, General Code, the board "with the exercise of ordinary care should have discovered the excessive loss and shrinkage of votes in that precinct, as shown by the poll books." Maybe they did. It is common knowledge to any one who has observed election returns that in every election there is a shrinkage of votes from the head to the end of the ticket. It is not alleged that any fraud or dishonesty motivated the board, only that its members were negligent. Did this one circumstance of such shrinkage indicate negligence? It is not alleged that any candidate called this to the attention of the board, as could have been done under Section 4785-149, General Code.

Nothing short of an examination of the ballots could have revealed these facts.

There are two conditions under which the board may examine and count ballots:

1. Before the official count is certified, under Section 4785-149, General Code, "on written demand of any candidate" the board is required to check discrep-

ancies in tne proceedings of the election-booth officers, and if necessary, may "open and recount the ballots." No one claims any candidate made such a request and the "loss and shrinkage" of votes in precinct D was as apparent to all of the candidates and their friends as it was to the board.

Section 4785-152, General Code, relied upon in the mandamus action does not authorize an examination of the ballots, and it, too, relates only to proceedings incident to making the canvass and official count.

2. Within five days "after the certificate of the official count has been made" a candidate or five or more electors may apply to the board in writing "to have the votes for any such candidate, or other candidates for the same office * * * recounted in any or all precincts," on making a deposit, all as provided in Section 4785-162, General Code. Section 4785-163, General Code, provides for notice to all candidates for such office, and Section 4785-164, General Code, points out the way the recount shall be had.

Any candidate or any five or more electors, including the relators in the mandamus action, might have taken advantage of this privilege. Five electors in behalf of Laderman did, but they confined their request to a count of Farnsworth votes in this and other precincts. Apparently they had scrutinized the returns from this precinct, and the "loss and shrinkage" there did not arouse their suspicion, or they would not have confined their request to a recount of one candidate's votes.

In view of all of these admitted facts, can it be said that the board was negligent in the manner in which it canvassed and certified the vote in this precinct? If, on such a slender thread as this charge of negligence, courts can interfere in elections, the results in them may not be settled until long after time for the offices to be filled will have expired.

When the error was discovered and the members of the board could not agree upon what should be done about it, they properly followed the direction of the statutes and submitted the problem to the Secretary of State, stating their findings and asking if they could change the official count as previously announced to correct this error, and he told them they could not and should not change it.

Section 4785-13, General Code, provides that:

"In all cases of a tie vote or a disagreement in the board, if no decision can be arrived at, the clerk shall submit the matter in controversy to the Secretary of State, who shall summarily decide the question and his decision shall be final."

The authority of the Secretary of State as provided in that section was in the election law of Ohio in substantially the same form when *State, ex rel. Chapman,* v. *Miller,* 52 Ohio St., 166, 39 N. E., 24, was decided. In that case the Board of Elections of Mercer county, not being able to agree about a certificate of nomination filed with it, submitted the question to the Secretary of State, then called the state supervisor of elections, who decided it and directed the board what to do. The loser obtained an injunction in the Common Pleas Court restraining the board from carrying out the direction of the state supervisor. In an action in mandamus in the Supreme Court against the board to compel it to obey the direction of the state supervisor, that court said:

"The statute provides that the questions shall be summarily decided, and that the decision shall be final. This necessarily excludes the jurisdiction of the Court of Common Pleas, as to the subject matter, and it is clear that the judge of the Court of Common Pleas was without jurisdiction, and that his order granting the injunction was utterly void and of no effect, and furnishes no excuse for the refusal to obey the order of the state supervisor of elections."

The action in that case was in the reverse of that sought here, but in principle was exactly the same. There, the Common Pleas Court by injunction sought to prevent action by the board of deputy state supervisors and the Supreme Court by mandamus told the board to ignore the injunction and obey the state supervisor.

Here the relators in mandamus seek to compel action which, if done, would be "void and of no effect." Instead of waiting until such order was made and then by prohibition enjoining the board from obeying the writ of mandamus, relator here seeks to prevent the judge of the Common Pleas Court from ordering what would be a writ "void and of no effect."

*State, ex rel. Chapman,* v. *Miller, supra,* has been cited and followed in many later cases, all sustaining the finality of the decision of the Secretary of State in a controversy like this. *Randall* v. *State, ex rel. Hunter,* 64 Ohio St., 57, 66, 59 N. E., 742; *State, ex rel. Hildebrandt,* v. *Stewart,* 71 Ohio St., 55, 75, 72 N. E., 307; *State, ex rel. Martin,* v. *Thompson,* 71 Ohio St., 76, 85, 72 N. E., 296; *Link* v. *Karb, Mayor,* 89 Ohio St., 326, 104 N. E., 632; *State, ex rel. Gongwer,* v. *Graves,* 90 Ohio St., 311, 314, 107 N. E., 1018; *State, ex rel. Scott,* v. *Swan,* 91 Ohio St., 61, 64, 109 N. E., 587; *State, ex rel. Crull,* v. *Eidgenoss,* 108 Ohio St., 493, 495, 141 N. E., 277; *Sullivan* v. *State, ex rel. O'Connor,* 125 Ohio St., 387, 391, 181 N. E., 805.

In *State, ex rel. Buel,* v. *Joyce,* 87 Ohio St., 126, 100 N. E., 325, after stating that the decisions of the Secretary are final and citing *State, ex rel. Chapman,* v. *Miller* and *Randall* v. *State, supra,* the court said:

"The statute so declares; and as at present advised, this court is of the opinion that those matters are not *per se* the subject of judicial cognizance, but are matters for political regulation and well within the legislative power."

It has been repeatedly decided by our Supreme Court that "elections belong to the political branch of the government and not to the judicial, and are not *per se* the subject of judicial cognizance, but are matters for political regulation." *State, ex rel. Gongwer, v. Graves, supra,* paragraph 1 of the syllabus and cases cited in it.

Hence, unless the court is empowered by statute with some specific power in relation to an election matter, it has no jurisdiction of the subject-matter. The power the respondent seeks to exercise over the subject matter before him in the mandamus cause is not authorized by statute and therefore that power does not exist. It is recognized that if fraud or an abuse of discretion is charged against election officers, the courts will intervene. *Sullivan* v. *State, ex rel. O'Connor, supra.* But no such charge is made against the board or any of its members.

For the reason that the respondent, as a judge of the Court of Common Pleas, does not have authority or jurisdiction to interfere with the election matter as herein presented on the admitted facts, and for the reason that the Secretary of State has duly decided the questions raised in the mandamus action and his decision is final, the petition and amendment thereto state a cause of action for a writ of prohibition and the answer does not state a defense to it. Accordingly, the demurrer to the answer is sustained and, if the respondent does not wish to plead further, a writ may issue as prayed for.

*Demurrer sustained.*

OVERMYER and LLOYD, JJ., concur.